UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| R. WAYNE KLEIN, the Court-Appointed Receiver of Trigon Group, Inc., and for the assets of Daren L. Palmer,<br><br>      Plaintiff,<br><br> v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, a Delaware Corporation, CAPITAL ONE, NATIONAL ASSOCIATION, a National Banking Association, and CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION, a National Banking Association,<br><br>      Defendants. | Case No. 4:10-CV-00629-EJL<br><br>**MEMORANDUM ORDER** |

**MEMORANDUM ORDER - 1**

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants Motion to Dismiss. The Motion is made under Federal Rules of Civil Procedure 12(b)(1) and (6). The matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 26, 2009, Plaintiff, R. Wayne Klein, was appointed Receiver of Trigon Group, Inc. and for the assets of Daren L. Palmer in two related enforcement actions filed by the Securities and Exchange Commission (the "SEC") and the Commodity Futures Trading Commission (the "CFTC"). *See* Case 4:09-cv-00075-EJL and Case 4:09-cv-00076-EJL. In those cases, Trigon and Mr. Palmer were alleged to have engaged in a large-scale Ponzi scheme.

The Complaint here details the Ponzi scheme undertaken by Trigon and Mr. Palmer. (Dkt. 1.) The Receiver has brought this action against Defendants Capital One Financial Corporation, Capital One, National Association, and Capital One Bank (USA), National Association to recover funds invested in Trigon that were diverted to Defendants

during the Ponzi scheme. (Dkt. 1.) The Receiver alleges the Defendants, between November 15, 2006 and August 29, 2008, received payments from Trigon in the sum of $44,259.75; specifically listing several of these payments. (Dkt. 1, pp. 7-9.) The Complaint raises claims for 1) Avoidance and Recovery of Fraudulent Transfers and 2) Constructive Trust and Other Provisional Remedies. (Dkt. 1.) The fraudulent transfer claim is brought under the Idaho Uniform Fraudulent Conveyance Act (UFTA), Idaho Code §§ 55-913, 55-914, and 55-916. The Constructive Trust claim seeks remedies provided for under Idaho Code § 55-916(b) and (c) (Dkt. 1.) The Defendants have filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) which the Court now takes up. (Dkt. 8.)

## STANDARD OF LAW

1.   **Rule 12(b)(1)**

A Defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most

**MEMORANDUM ORDER - 3**

favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 ‗9th Cir. 1988). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims ." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine*, 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at

**MEMORANDUM ORDER - 4**

1077 (citing *Thornhill*, 594 F.2d at 733-35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper.

2. **Rule 12(b)(6)**

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to

defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

**DISCUSSION**

Defendants' Motion raises several arguments as grounds for dismissal of the Complaint here including standing, failure to plead fraud with particularity, failure to state a claim, and statute of limitations. (Dkt. 8.)[1] The Court will address each in turn.

**1.      Rule 12(b)(1): Receiver's Standing**

Defendants argue the Court lacks jurisdiction in this case because the Receiver lacks standing to pursue claims under Idaho's UFTA because he is not a "creditor." (Dkt. 8, p. 5.) Instead, Defendants contend, this matter should be resolved under the United States Bankruptcy Code. In response, the Receiver argues as a federal equity receiver he has standing to assert claims under the UFTA on behalf of the debtor entity, in this case Trigon. (Dkt. 11, p. 5-6.) Defendants counter that nothing in the receivership orders give the Receiver here standing to pursue UFTA causes of action owned by third-party creditors. (Dkt. 15, p. 4.)

The claims here seek to recover funds allegedly unlawfully diverted from Trigon to the Defendants during the time the Ponzi scheme was operating to pay Mr. Palmer's creditors. (Dkt. 1.) Like the receiver in *Scholey v. Lehman*, 56 F.3d 750, 754-55 (7th Cir.

---

[1] Defendants have withdrawn two of its arguments concerning the unavailability of sealed orders appointing the Receiver and improperly suing several affiliated Defendants. (Dkt. 15, p. 2 n. 1.)

**MEMORANDUM ORDER - 6**

1995), a case cited by Defendants, here too the Receiver has standing to raise such claims. The Receiver's role in this case is to recover assets of Trigon unlawfully dissipated in order to maximize the return to the defrauded investors. (Dkt. 8, p. 5, Case 4:09-cv-00075-EJL.)

The Order Appointing Receiver in this matter states it is entered "for the purpose of marshaling and preserving assets in the above-captioned action" as well as to provide an "accounting" of Trigon and Mr. Palmer's assets. (Dkt. 8, Case 4:09-cv-00075-EJL.) The Order goes on to direct the Receiver to "take control of the Companies' funds, assets and property wherever situated, with the powers set forth herein, including powers over all funds, assets, premises...chooses in action, books, records, and other property belonging to or in the possession of or control of the Companies, and the Receiver is hereby authorized, empowered, and directed" to secure, control, and otherwise take possession of such funds, property, and assets held in the name of the Companies. (Dkt. 8, 4:09-cv-00075-EJL.) The Order further states that the Receiver is "authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and adjust actions in any...court or proceeding...as may in his sole discretion be advisable or proper to recover or conserve funds, assets and property of the Companies." (Dkt. 8, p. 6, 4:09-cv-00075-EJL.) As such, the Court finds the Receiver has standing to bring these claims under Idaho's UFTA.

**MEMORANDUM ORDER - 7**

## 2. Rule 12(b)(6)

### A. Failure to Plead Actual Fraud with Particularity

Defendants next argue the Complaint fails to state a claim for actual fraud because it fails to plead fraud with requisite particularity as required by Rule 9(b). (Dkt. 8, p. 7.) The Receiver counters that the Complaint properly alleges a claim for actual fraudulent transfer sufficient to satisfy Rule 9(b)'s particularity requirement. (Dkt. 11, p. 10.) In particular, the Receiver notes 1) the allegation of the existence of a Ponzi scheme is sufficient to plead actual intent to defraud; 2) the Complaint identifies the transfers sought to be avoided with particularity as to the dates, transferor, transferee, method, and amount of each transfer; and 3) the Complaint contains numerous specific factual allegations in support of its fraud claim. (Dkt. 11, p. 11.)

Fraud claims must satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The rule requires that the Complaint allege "the who, what, when, where, and how" of the alleged fraudulent conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); *see Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). "The purpose of this rule is to ensure that

defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations." *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

The Court, having reviewed the pleadings, finds the Complaint is sufficient to meet Rule 9(b). The Complaint includes particulars as to the identity of the transfers sought to be avoided, including the date, transferor, transferee, method of transfer, and amount of each alleged transfer. (Dkt. 1, pp. 7-9.) These facts as alleged in the Complaint are sufficiently particular to satisfy Rule 9(b)'s purpose in ensuring the Defendants have adequate notice of the specific conduct alleged against them. Further, the Complaint alleges Trigon was operating a Ponzi scheme and specific facts related to the scheme. (Dkt. 1, ¶¶ 12-37.) Such allegations satisfy the intent to defraud required for a claim of actual fraud. *See In re Bernard L. Madoff Inv. Securities LLC*, Bankruptcy No. 08–01789 (BRL), 2010 WL 5841402, at *6 (Bankr. S.D.N.Y. Feb. 24, 2011); *Donell v. Kowell*, 533 F.3d 762, 770-771 (9th Cir. 2008). As such, the Court finds the Complaint satisfies Rule 9(b).

    **B.**    **Failure to Plead Facts that the Receivership Did Not Receive Value from the Credit.**

Defendants contend the Complaint fails to state a claim because the receivership did receive value from Defendants in the form of satisfying the debts owed by Mr. Palmer. (Dkt. 8, p. 9.) The Receiver counters arguing the Defendants have failed to establish an affirmative defense to the actual fraudulent transfer claim because they have

not demonstrated both their good faith and reasonably equivalent value was received. (Dkt. 11, pp. 13-16.) Defendants maintain the Receiver has the burden of proving reasonably equivalent value was not conferred and has failed to do so. (Dkt. 15, p. 7.) In addition, Defendants argue the fact that the assets of Trigon and Mr. Palmer "have effectively been...consolidated" is such that the fraudulent transfer claims alleged here would improperly allow double recovery. (Dkt. 15, pp. 8-9.)

Both sides discuss *In re Leneve*, a bankruptcy case from Florida, arguing it supports each of their respective positions. *Leneve*, 341 B.R. 53 (Bankr. S.D. Fla. 2006). In *Leneve*, the bankruptcy court was confronted with a "tangled web" of entities which the debtor used to engage in a fraudulent pattern of conduct regarding transfers of assets. The bankruptcy trustee in that case filed an adversary proceeding to avoid certain fraudulent transfers under the United States Bankruptcy Code and Florida's UFTA. The *Leneve* court listed the elements of the fraudulent transfer claim as requiring the plaintiff to prove 1) a transfer of property occurred, 2) the transferred property belonged to the debtor, 3) the transfer occurred within certain statutory time periods, and 4) the debtor made the transfer with the intent to hinder, delay, or defraud creditors. *Id*. at 56. The court later went on to also state "the plaintiff must prove that the debtor did not receive 'reasonably equivalent value' in exchange for the transferred property." *Id.* at 57.

The Receiver here distinguishes *Leneve* arguing in that case none of the transfers came directly from the debtor whereas here, each of the transfers to the Defendants came

**MEMORANDUM ORDER - 10**

directly from the debtor, Trigon. (Dkt. 11, p. 15.) Further, the Receiver notes the *Leneve* court's language that "a debtor's payment 'on behalf of a third party' typically remains avoidable in bankruptcy because the debtor did not receive value in exchange." *Leneve*, 341 B.R. at 63 (citing *In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990) and *Schafer v. Las Vegas Hilton Corp. (In re Video Depot)*, 127 F.3d 1195 (9th Cir.1997) (Recognizing that "payments made by a corporate debtor on behalf of a subsidiary or a principal did not constitute 'reasonably equivalent value' as the debtor was not legally obligated to pay the debt; therefore, the transfers were not made on account of a valid antecedent debt.").

As an initial matter, the Court agrees with the Defendants that it is the Receiver's burden in the first instance to show the allegedly fraudulent transfer was made for reasonable value. *See* Idaho Code § 55-913(1). To prevail on his claim, the Receiver must prove at trial that Trigon:

(a) made the transfer or incurred the obligation without receiving a *reasonably equivalent value* in exchange for the transfer and

(b) was insolvent at that time or became insolvent as a result of the transfer or obligation.

*See* Idaho Code §§ 55-913, 914(1) (emphasis added). Upon the Receiver satisfying all of the elements of the prima facie case for his UFTA claim, the burden then shifts to the Defendants to prove any affirmative defenses they may raise under Idaho Code § 55-917(1) such as the good faith defense which requires proof that Defendants 1) acted in

**MEMORANDUM ORDER - 11**

good faith and 2) gave reasonably equivalent value in exchange for the transfer. *See* Idaho Code § 55-917(1)

In looking at the allegations in the Complaint here, the Court finds the Receiver has made sufficient allegations to overcome this Rule 12(b)(6) Motion. In particular, the Complaint alleges that the "transfers were made without Trigon receiving reasonably equivalent value in exchange, when Trigon was either insolvent or had become insolvent." (Dkt. 1, ¶ 41.) The transfers alleged are those made between November 15, 2006 and August 20, 2008 as particularly described in Paragraph 36 of the Complaint. In describing the Ponzi scheme, the Complaint alleges that Mr. Palmer has admitted to using investor funds to pay his personal expenses and purchases. (Dkt. 1, ¶¶ 26-29, 33-35.) The Court finds these allegations are sufficient to state a UFTA claim.

### C. Failure to State a Claim Due to Setoff

The Defendants argue they are entitled to offset of any damages in this case from the Receiver and, therefore, the Complaint should be dismissed as it fails to state a claim. (Dkt. 8, p. 12.) In response, the Receiver argues the Defendants are not entitled to an offset because he will not be liable for Mr. Palmer's obligations to the Defendants if the payments are avoided. (Dkt 11, pp. 18-19.)

The Defendants essentially ask this Court to dismiss this entire action because they have "equal counterclaims against the Receiver." (Dkt. 15, p. 10.) This is not a proper basis for dismissal of an action. While the Court understands the practicality of the

**MEMORANDUM ORDER - 12**

Defendants' argument, the basis for a dismissal under Rule 12(b)(6) is failure to state a claim for relief that is plausible on its face. The Receiver has done so here. Whether or not the claims are successful and what, if any, damages are recoverable are entirely different questions not properly presented on this Motion.

### D. Failure to State a Claim for Constructive Trust

The parties agree that constructive trust is not an independent cause of action and, therefore, if the fraudulent transfer claim is dismissed this claim also fails. (Dkt. 8, p. 13), (Dkt. 11, p. 19.) Because the Court has determined the fraudulent transfer claim survives the Motion to Dismiss, so too does the Constructive Trust Claim.

### E. Statute of Limitations

Defendants assert the November 15, 2006 transfer of $1,966 is barred by the four-year statute of limitations found in Idaho Code § 55-918(2) which states:

> A cause of action with respect to a fraudulent transfer or obligation under this act is extinguished unless action is brought:
>
> (1) Under section 55-913(1)(a), Idaho Code, within four (4) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under section 55-913(1)(b) or 55-914(1), Idaho Code, within four (4) years after the transfer was made or the obligation was incurred; or
>
> (3) Under section 55-914(2), Idaho Code, within one (1) year after the transfer was made or the obligation was incurred.

Idaho Code §55-918. Defendants argue the Receiver has failed to state a claim under Idaho Code § 55-913(1)(a) for actual fraudulent transfer and, therefore, the only applicable section here is the four-year time limitation contained in Idaho Code § 55-918(2) for constructive fraudulent transfers. Because the November 15, 2006 transaction occurred outside of the four-year time frame, as the Complaint was filed on December 17, 2010, Defendants assert it is untimely. (Dkt. 1, p. 7.) The Receiver maintains it has stated a claim for actual fraudulent transfers and, further, counters that "the doctrine of adverse domination provides for a longer statute of limitations" such that the four-year limitations period was tolled "until the date of the Receiver's appointment" on February 26, 2009. (Dkt. 11, p. 20.)[2] In reply, Defendants argue that the "adverse domination theory cannot be applied against unrelated third parties." (Dkt. 15, p. 11.)

### (1) The Adverse Domination Theory

"Under the doctrine of adverse domination, a statute of limitations is tolled on an action against director/officer misconduct so long as a majority of the board is controlled by the alleged wrongdoers. The doctrine rests on the theory that if the wrongdoers control the corporation through a majority of stock ownership and control the directorate[,] there [would] consequently [be] no one to sue them." *In re Yellowstone Mountain Club, LLC*,

---

[2] The Receiver asserts that Trigon was controlled by Mr. Palmer who engaged in conduct harmful to Trigon, including diverting millions of Trigon dollars for his personal use. (Dkt. 11, p. 20.) The Complaint alleges the investors did not know of Mr. Palmer's wrongdoing until after the Ponzi scheme unraveled when the SEC and CFTC filed the underlying actions. *See e.g.* (Dkt. 1, ¶ 12-37.) Thus, the Receiver argues the investors could not have induced Trigon to file suit in this case before the date of the Receiver's appointment.

**MEMORANDUM ORDER - 14**

436 B.R. 598, 650 (Bkrtcy. D. Mont. 2010) (citation omitted).³ "In order to prove adverse domination, 'the wrongdoer's control [must] result[ ] in the concealment of causes of action from those who otherwise might be able to protect the corporation.'" *Id*. (citation omitted).

The critical factor in applying the doctrine is that the entity is in the control of the wrongdoers. *Warfield v. Carnie*, Civil Action No. 3:04-cv-633-R, 2007 WL 1112591, *15 (April 13, 2007 N.D. Tex.) (citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984); *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 772 (4th Cir. 1995) ("the wrongdoers' control results in the concealment of any causes of action from those who otherwise might be able to protect the corporation"); *Quilling v. Cristell*, 2006 WL 316981 *6 (W.D.N.C. 2006) ("Equitable tolling principles recognize that so long as a corporation remains under the control of wrongdoers, it cannot be expected to take action to vindicate the harms and injustices perpetrated by the wrongdoers.")). In *Mosesian*, the Ninth Circuit stated a "plaintiff who seeks to toll the statute because the corporation was dominated must show 'full, complete and exclusive control in the directors or officers

---

³ Similarly stated, "[u]nder the common law doctrine of adverse domination, the statute of limitations for an entity's claim is tolled when the entity is controlled or dominated by individuals engaged in conduct that is harmful to the entity." *Warfield v. Carnie*, Civil Action No. 3:04-cv-633-R, 2007 WL 1112591, *15 (April 13, 2007 N.D. Tex.) (citing *FDIC v. Jackson*, 133 F.3d 694, 698 (9th Cir. 1998) (citations omitted). "The doctrine recognizes that officers or directors who have engaged in activities that harm an entity cannot be expected to have brought suit against themselves." *Id.* (citations omitted). "Under those circumstances, the entity is paralyzed to defend itself against the wrongdoers and the doctrine ensures that the statute of limitations begins to run only once the wrongdoing directors lose control of the entity." *Id.* (citations omitted).

**MEMORANDUM ORDER - 15**

charged.'" *Mosesian*, 727 F.2d at 879 (citation omitted).[4] "The test is that 'once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue.'" *Id.*

Defendants counter that the "adverse domination" theory cannot be applied against unrelated third-parties who were not in control of the organization or responsible for the delay. (Dkt. 15, p. 11.) Defendants point to *Nasr v. De Leon*, 18 Fed. Appx. 601, 605 n. 4 (9th Cir. 2001), a bankruptcy case, wherein the Ninth Circuit did not apply adverse domination theory stating it "is wholly inapplicable" because, in that case, the alleged dominating agent and the alleged wrongdoer were not the same. *Id.* In that case, the Ninth Circuit did, however, conclude that equitable tolling applied under the bankruptcy code.

The Court agrees with the Defendants that the adverse domination theory does not apply to this case. The theory is premised on the equitable principle that a statute of limitations should not deny the claims of an entity where the claims were hidden from it by the wrongdoing of its controlling officer or director. On the other hand, however, the temporal limitations invoked by the explicit language of the UFTA provide for the "extinguishment" of a cause of action for a fraudulent transfer if such claim is not filed

---

[4] The Ninth Circuit ultimately concluded that the trustees had failed to offer admissible evidence of domination and, therefore, upheld the district court's directed verdict in favor of the defendant on the ground that the trustees' action was untimely. *Mosesian*, 727 F.2d at 879.

**MEMORANDUM ORDER - 16**

with in the prescribed time. The purpose of such a limitation is to provide finality to such claims.

Such exacting statutory language in the UFTA, the Court finds, extinguishes a claim after the four-year period *unless* the one-year discovery rule applies. *See Warfield v. Alaniz*, 453 F.Supp.2d 1118, 1130 (D. Ariz. 2006) (distinguishing between a statue of limitations and a statute of repose).[5] In *Warfield*, the court discussed Arizona's UFTA concluding "the fact that the legislature chose language specifying that claims brought outside the statute's time limits are "extinguished," rather than merely "barred," supports the conclusion that this is a statute of repose rather than a statute of limitation. *Warfield*, 453 F.Supp.2d at 1130 (discussing A.R.S. § 44-1009). "A claim that has been extinguished cannot be tolled." *Id.* (citing *Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) (statute of repose sets "absolute time limit beyond which liability no longer exists and is not tolled")).

The California's UFTA has been similarly construed by the Ninth Circuit who concluded that "the Legislature clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the

---

[5] "A statute of limitations is a procedural device that operates as a defense to limit the remedy available for an existing cause of action. *Warfield*, 453 F.Supp.2d at 1130 (citation omitted). "A statute of repose, on the other hand, creates a substantive right to be free from liability after a legislatively- determined period." *Id.* "While a statute of limitations merely bars the enforcement of a right, a statute of repose extinguishes the claim after the specified time period has expired." *Id.*; *see also United States v. Bacon*, 82 F.3d 822, 823 (9th Cir.1996). "Unlike a traditional statute of limitations, the statute of repose contained in the UFTA cannot be waived." *Id*.

UFTA or otherwise." *Forum Ins. Co. v. Comparet*, 62 Fed.Appx. 151, *1 (9th Cir. 2003) (citing Cal. Civ.Code § 3439.09 (Comments) (setting forth that the purpose of the section "is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy") (other citations omitted). Thus, finding California's UFTA, Cal. Civ.Code § 3439.09(c), to be a statute of repose pertaining to all actions relating to fraudulent transfers. *Id.*

Idaho's avoidable transfer statutes are "similar in form and substance" to the UFTA statutes in California and Arizona. *See In re Hodge*, 200 B.R. 884, 892 (Bkrtcy. D. Idaho 1996) (citing *BFP v. Imperial Sav. & Loan Ass'n*, 974 F.2d 1144, 1147 (9th Cir. 1992)) *reversed on other grounds*, 220 B.R. 386 (D. Idaho 1998). "Both allow a transfer made within the time prescribed to be avoided when the debtor did not receive a reasonably equivalent value in exchange for the transfer and while the debtor was insolvent." *Id.* Therefore, the Court may properly analyze Idaho's UFTA statute under the same legal standards. *Id.* at 892 n. 11 (discussing *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir.1991) wherein the Ninth Circuit Court of Appeals held that "because California's statute is similar in form and substance to the Code's avoidable transfer provisions, they may be interpreted contemporaneously. The Idaho Uniform Fraudulent Transfer Act is identical to California's statute. Therefore, this Court will construe Idaho's statutes and the Code provision together as well.").

Based on the cases discussed above and the statutory language of Idaho's UFTA, the Court finds the time limits applicable to the Receiver's fraudulent-transfer claims began to run at the time each allegedly fraudulent transfer took place; not on the date that the Receiver was appointed. Like Arizona and California, Idaho's UFTA "extinguishes" causes of actions where they are filed outside of the specified time frame. *See* Idaho Code § 55-918. Thus, as applied to this case, the claim as to the November 15, 2006 transfer is outside of the four-year statutory limitation and untimely.

### (2) One-Year Discovery Rule

The Court has determined above that the Receiver has alleged a claim for actual fraud. Thus, if adverse domination does not apply to toll the four-year requirement, the Receiver's claim could still be timely were it to satisfy the statute's one-year reasonable discovery exception. *See* Idaho Code § 55-918(1).

The Receiver's position in this case is that the time should began as of the date of his appointment, February 26, 2009. (Dkt. No. 11, p. 20.) That being the case, the Court finds the one-year discovery rule would not save the Receiver's claim as to the November 15, 2006 transfer because his appointment came some twenty-two months before the Complaint was filed on December 17, 2010. (Dkt. 1.) Accordingly, the claim as to the November 15, 2006 transfer is untimely and the Motion will be granted as to this claim.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (Dkt. 8) is **GRANTED** in part and **DENIED** in part as stated herein. The Motion is granted as to the November 15, 2006 transfer claim, that particular claim is **DISMISSED WITH PREJUDICE**. The remainder of the Motion is denied.

DATED: **July 29, 2011**

Honorable Edward J. Lodge
U. S. District Judge